UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

| | | |
|---|---|---|
| LYNN A. ULMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-789 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On March 7, 2006, plaintiff filed her application for benefits alleging a June 28, 2002 onset of disability.[1] Plaintiff's disability insured status expired on December 31, 2003. Thus, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or before December 31, 2003. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim for DIB benefits was denied on initial review. On February 11, 2009, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 27-64). On March 16, 2009, the ALJ issued a decision finding that plaintiff was not disabled before her insured status expired. (A.R. 16-24). On July 22, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] DIB benefits are payable up to twelve months before the application for benefits is filed. 20 C.F.R. § 404.621(a)(1). Therefore, March 2005 is plaintiff's earliest possible entitlement to DIB benefits.

On August 9, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. Plaintiff asks the court to overturn the Commissioner's decision by the following assignment of error:

THE ERROR IN DATING EXHIBIT 1F IS PATENT ON THE FACE OF THE DOCUMENT, IS NOT HARMLESS, AND REQUIRES REVERSAL AND REMAND.

(Plf. Brief at 4, docket # 7; *see also* Reply Brief at 1-2, docket # 11).  Plaintiff relies on evidence that she never presented to the ALJ.  (docket # 7-1 at ID #s 340-43).  The newly proffered evidence must be addressed as an implicit request for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g), because that is the only context in which the court can consider such evidence.  Upon review, I recommend that plaintiff's request to remand this case to the Commissioner under sentence six of section 405(g) be denied.  I further recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.

"If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 28, 2002, through December 31, 2003, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after June 28, 2002. (A.R. 18). The ALJ found that through her date last disability insured, plaintiff had the following severe impairments: "degenerative disc disease, lumbar spine with chronic back pain, status-post surgery;

degenerative changes of the cervical spine; and depression." (A.R. 18).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20).  Plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except claimant is limited to unskilled work.  She requires the option to sit or stand at will every 30 to 60 minutes.  She can engage in occasional bending, twisting, and turning and she cannot work around heights or moving machinery.

(A.R. 21).  The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (A.R. 22).  Plaintiff was unable to perform her past relevant work.  (A.R. 22). Plaintiff was 47 years old as of her date last insured.  Thus, at all times relevant to her claim for DIB benefits plaintiff was classified as a younger individual.  (A.R. 22).  Plaintiff has at least a high school education and is able to communicate in English.  (A.R. 23).  The transferability of job skills was not material to a determination of disability.  (A.R. 23).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 12,000 jobs in Michigan's lower peninsula that the hypothetical person would be capable of performing.  (A.R. 61).  The ALJ found that this constituted a significant number of jobs. Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (A.R. 23-24).

**1.**

Plaintiff asks the court to overturn the Commissioner's decision based on evidence that was never presented to the ALJ.  The proffered evidence is an operative report for plaintiff's January 20, 2003 lower lumbar fusion surgery and an operative report for her March 29, 2004 hardware removal surgery, both procedures having been performed by plaintiff's treating surgeon, Kenneth Easton, M.D.  (docket # 7-1 at ID #s 340-43).  Where, as here, the Appeals Council denies review, the court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).  The issue, therefore, is whether plaintiff is entitled to a remand so that the ALJ can consider this evidence.

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)."  *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006).  The statute permits only two types of remand:  a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009).  The court cannot consider evidence that was not submitted to the ALJ in the sentence four

context.[2]  It can only consider such evidence in determining whether a sentence six remand is appropriate.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding.  *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010).  Courts "are not free to dispense with these statutory requirements."  *Hollon*, 447 F.3d at 486.

Plaintiff's proffered evidence is not new because both operative reports existed years before the ALJ's March 16, 2009 decision.  *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

Plaintiff states that the reports "somehow" never made it into the record presented to the ALJ.  (Plf. Brief at 3).  This statement falls far short of good cause.  The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 485.  The record suggests that Dr. Easton's records were not presented to the ALJ because plaintiff's treating surgeon believed that she was capable of returning to work on or about May 31, 2003, without restrictions.  (A.R. 261).  The appearance of a deliberate omission, rather than an accidental one, is reinforced by plaintiff's attorney's decision to offer only Easton's surgical reports.  Dr. Easton's treatment notes would

---

[2]Plaintiff's brief and reply brief contain the identical requests for a sentence four remand: "[I]f the District Court determines that the law and evidence show an injustice occurred but that benefits cannot simply be granted without taking more evidence, it is requested that the decision be reversed and the case remanded for further proceedings before a different Administrative Law Judge."  (Plf. Brief at 6; Reply Brief at 2-3).  These requests are indulgently addressed herein as requests for remand under sentence six.

document plaintiff's post-surgical recovery and when her treating surgeon believed that plaintiff was capable of returning to work.  I find nothing approaching good cause.

Finally, in order to establish materiality, plaintiff must show that introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster*, 279 F.3d at 357.  The operative reports reveal no surgical complications and a solid fusion.  The proffered evidence would not have reasonably persuaded the Commissioner to reach a conclusion finding plaintiff disabled on or before the December 31, 2003 expiration of her disability insured status.

I find that plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted.  Her request for a sentence six remand should be denied because she has not carried her statutory burden.  Her arguments must be addressed on the record presented to the ALJ.

### 2.

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because of an error by the ALJ.  Plaintiff fell off a ladder on December 2, 2001 (A.R. 183-88), but the ALJ mistook the date a copy of the hospital's electronic medical record of the incident was printed (April 25, 2006) as the date of plaintiff's accident, and then drew an adverse credibility inference based on the error.  The ALJ's observation that disabled individuals generally do not climb ladders is misplaced, but the error is harmless.  *See Rabbers v. Commissioner*, 582 F.3d 647 (6th Cir. 2009).  Substantial evidence is the applicable standard of review, not perfection.  *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006).  The ALJ found that plaintiff's

testimony regarding the intensity, persistence, and limiting effects of her symptoms was not fully credible because it was inconsistent with the objective evidence and the opinions of her treating pain specialist, Daniel Mankoff, M.D. There is more than substantial evidence supporting the ALJ's credibility determination.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Payne v. Commissioner*, 402 F. App'x 109 (6th Cir. 2010). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the

-8-

opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ considered all the medical records plaintiff submitted in support of her claim for DIB benefits, including the records falling outside the narrow period at issue: June 28, 2002 (plaintiff's alleged onset of disability) through December 31, 2003 (the date plaintiff's disability insured status expired). Plaintiff fell off a ladder on December 2, 2001, months before her alleged disability onset. On December 3, 2001, she was examined and treated at Holland Hospital. Her cervical spine x-rays were negative for fracture, but they did reveal some degenerative disc disease at the C6-C7 level. Her lumbar spine x-rays were normal. Plaintiff was instructed to rest, apply ice to the sore area, continue to use ibuprofen or Vicodin for pain, and to return to the hospital if her problem persisted or became worse. (A.R. 183-88).

Dr. Mankoff began treating plaintiff on January 16, 2002. He noted that plaintiff's gait was not antalgic and that she could "stand on her heels and her toes. She ha[d] full lumbar flexion and extension." (A.R. 278). Plaintiff displayed some "mild" paravertebral muscle spasm. Dr. Mankoff treated plaintiff with paravertebral injections and anti-inflammatory medication. (A.R. 278).

Plaintiff testified that she injured herself at work in June 2002, when she stepped into a hole and fell. (A.R. 33). Her July 1, 2002 lumbar spine x-rays were normal. (A.R. 195). On July 8, 2002, plaintiff was examined at the Allegan Medical Clinic and received prescriptions for Vicodin and Flexeril. Four days later, she made a telephone call to the clinic requesting more Flexeril and

-9-

"Vicodin ES."  Physician's Assistant Sebright denied plaintiff's request: "She just had #30 pills on July 8 so she has gone through #30 pills in the last four days and is wanting more.  I do not feel comfortable doing this, in fact, I am starting to get concerned that she is having some drug-seeking behaviors." (A.R. 192).  A July 22, 2002 MRI of plaintiff's lumbar spine showed only "mild" spinal stenosis at L4-L5 and mild central disc protrusion with annular tear at L5-S1.  (A.R. 194).  On July 26, 2002, John F. Walstrum, M.D., indicated that he would keep plaintiff off work from her job as a park ranger through August 12, 2002.  (A.R. 190).

On July 31, 2002, plaintiff was examined and treated by Dr. Mankoff at Holland Hospital's Pain Management Center.  Dr. Mankoff treated plaintiff with epidural injections which resulted in "very good," but somewhat temporary pain relief.  (A.R. 273-75).  Plaintiff's October 2, 2002 discography showed degenerative changes at L3-4, L4-5, and LS-S1.  (A.R. 268-71).  A CT scan showed a disc herniation at L5-S1.  (A.R. 272).  Dr. Mankoff provided additional epidural injections in October and November 2002.  (A.R. 265-66).  Plaintiff testified that she underwent back surgery in January 2003.  (A.R. 52).  She did not submit any medical records from her treating surgeon, Dr. Easton.[3]  (see A.R. 135).

On March 19, 2003, Dr. Mankoff noted that it had been approximately seven weeks since plaintiff's fusion surgery. (A.R. 263).  Plaintiff reported that a recent slip and fall on ice had aggravated her lumbar spine.  X-rays of plaintiff's spine revealed her status post lumbar fusion.  There was no evidence of injury related to plaintiff's slip and fall.  (A.R. 264).  On May 7, 2003, plaintiff stated that she was having significant problems with depression.  Dr. Mankoff provided her

_____

[3]Dr. Mankoff's progress notes reveal Dr. Easton's opinion that plaintiff was capable of returning to work in late May 2003, without restrictions.  (A.R. 261).

-10-

with a prescription for Effexor, 150 mg.  (A.R. 262).  On May 23, 2003, Dr. Mankoff released plaintiff to return to work with the following restrictions:  no lifting over 10 pounds, the option to sit/stand at will, and no repetitive bending and twisting.  (A.R. 260).  Dr. Mankoff provided treatments in July, August, September, and October 2003.  Plaintiff reported that a caudal injection gave her some pain relief.  Her prescription for Neurontin was increased.  (A.R. 253-58).  In December 2003, plaintiff reported that her back hardware would be removed in February or March 2004.  She complained of continued depression and Dr. Mankoff recommended an evaluation by a psychiatrist.  (A.R. 251-52).  Plaintiff's disability insured status expired on December 31, 2003.

On March 24, 2004, Dr. Mankoff noted that plaintiff's EMG "did not show any significant evidence of radiculopathy."  (A.R. 248).  Plaintiff's October 30, 2004 lumbar and cervical spine MRI scans showed her earlier fusion and compression, but no recurrent disc herniation or stenosis.  (A.R. 206).  Her cervical spine MRI showed degenerative changes at C6-7.  In February 2005, Dr. Mankoff indicated that the following work restrictions were appropriate:  no lifting over 10 pounds, no repetitive bending, twisting, or lifting, a sit/stand option, and no overhead reaching.  Plaintiff also needed to limit the time she spent driving.  (A.R. 203).  Dr. Mankoff continued to treat plaintiff through at least December 15, 2008.  (A.R. 196-201, 236-44).

The ALJ provided a lengthy explanation why he found that plaintiff's testimony regarding her functional limitations was not fully credible.  He emphasized that the objective evidence did not support plaintiff's allegations of disabling pain and Dr. Mankoff's opinion that she was capable of performing a limited range of sedentary work:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant was injured in June 2002 and an MRI of the lumbar spine in July 2002 showed mild spinal stenosis at L4-5 and mild disc protrusion with annular tear. An EMG of the right leg performed in December 2002 was negative. Exam in November 2002 showed sensory was intact and she had a full range of motion and normal gait. She underwent a decompression and fusion of L4-S1 in January 2003 and radiographs from September 2004 showed the fusion appeared solid. Her treating physician limited her to less than a full range of sedentary work activity which the undersigned has taken into consideration. The claimant was also treated at the pain center for depression but did not seek actual mental health treatment until 2004. Also noted is the fact that the claimant is seeking disability since June 2002 and indicating that she can do very little because of pain, records show that she was actually climbing a ladder in 2006 wherein she fell about 7 or 8 feet backwards and had neck pain down her left shoulder and arm all the way to the knee. The fact that she was climbing a ladder is not consistent with being disabled prior to December 2003 and brings her credibility into question.

The Administrative Law Judge finds that the medical evidence does not demonstrate any debilitating complications from the claimant's alleged impairments. Although she has some limitations from her impairments, her symptoms and limitations are not credible to the extent alleged, nor supported by the objective evidence of record. Records do not show that the claimant was completely unable to engage in any substantial gainful activity prior to December 31, 2003, and clearly reflect the ability to perform the limited work activities as found by the undersigned.

(A.R. 22).

Plaintiff is correct that the ALJ misread the date Exhibit 1F was printed as the date she fell off a ladder. The ALJ's error is harmless because the objective evidence and the opinion of plaintiff's treating pain specialist, Dr. Mankoff, provide more than substantial evidence supporting the ALJ's credibility determination.

**Recommended Disposition**

For the reasons set forth herein,  I recommend that plaintiff's motion to remand this case to the Commissioner under sentence six of section 405(g) be denied.  I further recommend that the Commissioner's decision be affirmed.


Dated:   September 8, 2011          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*,  454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).